[No. C037965. Third Dist. Apr. 2, 2002.]

MARILYN BAGATTI, Plaintiff and Appellant, v.
DEPARTMENT OF REHABILITATION et al., Defendants and
Respondents.

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

**COUNSEL**

John R. Hargreaves for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Jacob Appelsmith, Alicia M. B. Fowler and A. Kay Lauterbach, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**SIMS, Acting P. J.**—Plaintiff Marilyn Bagatti appeals from the judgment of dismissal entered following the sustaining of a demurrer without leave to amend to her second amended complaint for damages allegedly caused by defendants' failure to provide a reasonable accommodation for her disability as required by the California Fair Employment and Housing Act (FEHA). We shall conclude that, although some allegations in the complaint do not state a cause of action, other allegations do state a cause of action. We shall therefore affirm the judgment in part and reverse the judgment in part.

Plaintiff's second amended complaint pleads in pertinent part as follows:

"1.   Plaintiff, Marilyn Bagatti, is and at all times hereinafter mentioned was a resident of Sacramento County, California.

"2.   Defendant, California Department of Rehabilitation, is and at all times hereinafter mentioned was an agency of the State of California and existed within the State of California, with its principal place of business located in Sacramento, California.

"3.   Defendant, Michael D. Fuentes, is and at all times hereinafter mentioned was employed by and acting within the course and scope of his employment as an agent of the California Department of Rehabilitation and the State of California in the position of Chief Office of Civil Rights. [¶] . . . [¶]

"6.   Plaintiff began her employment with the California Department of Rehabilitation on July 1, 1987. Plaintiff worked for the California Department of Rehabilitation for nearly twelve years. She worked in various jobs

including Senior Accounting Clerk and Supervising Accounting Clerk for the last eight years. In this position she was responsible for supervising and overseeing the work of five employees and the hiring of some employees. Over the years, Plaintiff received merit pay increases, which are accompanied by a signed statement stating Plaintiff was fulfilling her job duties, and Plaintiff was generally given favorable performance evaluations[.]

"7. The public policy of the State of California set forth within Government Code section 12940 supports employment and utilization of persons with a medical condition or physical handicap. If it is within the ability of the employer to make a reasonable accommodation to such medical condition, such as job restructuring, reassignment or transfer, part-time or a modified work schedule, such reasonable accommodation must be made by the public entity.

"8. As a result of severe polio and post polio, Plaintiff is a disabled individual who is unable to walk long distances. Plaintiff was substantially impaired in her ability to move around her work site as needed and to transport herself from her car to her work station.

"9. Beginning on or about February, 1998, plaintiff requested a reasonable accommodation of her disability in the form of motorized transportation from her parked car to her work station and motorized transportation within her work site.

"10. Her job duties required her to transport herself long distances within the work site and to travel to and from the work site.

"11. Plaintiff's immediate supervisor, Betty Jong, refused on or about June, 1998, to provide any accommodation. Jong denied Plaintiff's accommodation request for a motorized vehicle and even refused to provide hand railing or chairs along the hallways of the job site to aid Plaintiff in transporting herself around the site. Jong told Plaintiff and Plaintiff's co-workers that Plaintiff should just retire.

"12. On July 15, 1998, Michael D. Fuentes, Chief Office of Civil Rights and A.A. officially denied Plaintiff's request for a reasonable accommodation.

"13. On November 30, 1998, Plaintiff filed a complaint with the Department of Fair Employment and Housing stating that she was discriminated against based on her disability and wrongfully denied a reasonable accommodation of her disability.

"14. On December 21, 1998, as a direct result of Defendants' discrimination and refusal to accommodate Plaintiff's disabilities, Plaintiff suffered a severe industrial injury that has prevented her from returning to work. Because of Defendants' discriminatory practices, Plaintiff was forced to walk a distance in excess of her physical capabilities. As a result, Plaintiff was injured and suffered physical and emotional injuries.

"15. As a consequence of Defendants' discrimination, Plaintiff suffered physical injuries, which included a broken right fibula, tibia, and ankle, as well as bruising and swelling in her left leg. As a result of these injuries, Plaintiff had to undergo a series of surgeries.

"16. Plaintiff became substantially limited in her daily life activities as a result of these injuries. Plaintiff is unable to return to work due to the physical and emotional injuries she suffered because of the Defendants' discrimination.

"17. On January 13, 1999, Defendants offered to provide Plaintiff the reasonable accommodation she requested. Since this offer was after Plaintiff's severe industrial injury on December 21, 1998, Plaintiff was not able to accept Defendants' offer at that time.

"18. On April 6, 1999, Plaintiff received a right to sue letter from the Department of Fair Employment and Housing relating to her disability discrimination complaint.

"19. Defendants discriminated and retaliated against Plaintiff based on her disability. Defendants refused to provide her a reasonable accommodation, when such accommodations had been made for the other employees, and this denial caused Plaintiff severe physical and emotional injury. Defendants created an unbearable and hostile work environment by singling out Plaintiff, telling Plaintiff to just retire when she would request an accommodation, and circulating an inflammatory and libelous e-mail to at least 47 employees impugning Plaintiff. Defendants failed to reasonably accommodate Plaintiff's known disability and this directly led to her December 21, 1998 injury. Defendants limited, segregated or classified the Plaintiff in a way that adversely affected her opportunities for employment. Defendants also excluded or otherwise denied equal jobs or benefits or opportunities to the Plaintiff as a qualified individual because of known disabilities of the Plaintiff.

"20. As a result of the employment discrimination as above alleged, Plaintiff has suffered general damages in the form of pain and suffering,

physical injury, emotional distress, humiliation and embarrassment. Plaintiff is therefore requesting general damages in an amount to be proven at time of trial.

"21. As a result of the above-mentioned employment discrimination, Plaintiff has suffered special damages in that Plaintiff has lost wages and has incurred other damages and costs in an amount to be proven at the time of trial."

The trial court sustained defendants' demurrer without leave to amend and entered judgment dismissing plaintiff's complaint. Plaintiff timely filed a notice of appeal.

## DISCUSSION

### I

### *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

"If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer. '[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the factual allegations of the complaint are adequate to state a cause of action under any legal theory. The courts of this state have . . . long since departed from holding a plaintiff strictly to the "form of action" he has pleaded and instead have adopted the more flexible approach of examining the facts alleged to determine if a demurrer should be sustained.' [Citations.]" (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38-39 [77 Cal.Rptr.2d 709, 960 P.2d 513], italics omitted.)

## II

### *Plaintiff Has Pleaded a Valid Cause of Action for Damages Caused by an Unlawful Employment Practice Under the FEHA.*

██  Plaintiff contends she has stated a cause of action for damages under the FEHA because defendants engaged in an unlawful employment practice that caused her damage.

Plaintiff relies on subdivision (m) of Government Code section 12940.[1] (All further statutory references are to the Government Code unless otherwise indicated.) Section 12940 provides in relevant part as follows:

"It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: [¶] . . . [¶]

"(m) For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operation."

Plaintiff first contends she has adequately pleaded that she suffers from a physical disability within the meaning of the FEHA. "Physical disability" as pertinent, is defined in subdivision (k) of section 12926 as follows:

" 'Physical disability' includes, but is not limited to, all of the following:

"(1) Having any physiological disease, disorder, condition, cosmetic disfigurement or anatomical loss that does both of the following:

"(A) Affects one or more of the following body systems: neurological, immunological, musculoskelatal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine.

"(B) Limits a major life activity. . . ."

██  "[T]he touchstone of a qualifying handicap or disability is an actual or perceived physiological disorder which affects a major body system and

---

[1]Government Code section 12940 is set out in its entirety as appendix A, *post.*

limits the individual's ability to participate in one or more major life activities." (*Cassista v. Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1061 [22 Cal.Rptr.2d 287, 856 P.2d 1143].)[2]

■ As pertinent, plaintiff's second amended complaint alleged that as a result of severe polio she was unable to walk long distances; that her job duties required her to transport herself long distances within the work site and to travel to and from the work site; and that she was substantially impaired in her ability to move around her work site as needed and to transport herself from her car to her work station.

We agree with plaintiff that these allegations sufficiently pleaded a physiological condition that affected her musculoskeletal system and limited a major life activity within the meaning of subdivision (k) of section 12926. At oral argument, the Department of Rehabilitation (the Department) conceded plaintiff is disabled within the meaning of section 12926, subdivision (k).[3]

Plaintiff also contends she adequately pleaded that the Department did not make reasonable accommodation to her disability. An employer's duty of reasonable accommodation is defined in section 12926, subdivision (n) as follows:

"(n) 'Reasonable accommodation' may include either of the following:

"(1) *Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities.*

"(2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, *acquisition* or modification *of equipment or devices*, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." (Italics added.)

---

[2]At another point in the opinion, the *Cassista* court remarked that a handicap had to "*substantially*" limit a major life activity. (*Cassista v. Community Foods, Inc., supra,* 5 Cal.4th at p. 1060.) In 2000, the Legislature added section 12926.1, which provides in pertinent part, "(c) . . . the Legislature has determined that the definitions of 'physical disability' and 'mental disability' under the law of this state require a 'limitation' upon a major life activity, but do not require, as does the Americans with Disabilities Act of 1990 [Public Law No. 101-336], a 'substantial limitation.' . . . [¶] (d) Notwithstanding any interpretation of law in Cassista v. Community Foods[, Inc., *supra,*] 5 Cal.4th 1050, the Legislature intends (1) for state law to be independent of the Americans with Disabilities Act of 1990 (2) to require a 'limitation' rather than a 'substantial limitation' of a major life activity . . . ." (Stats. 2000, ch. 1049, § 6.)

[3]Our reference to the Department includes defendant Michael D. Fuentes.

"Reasonable accommodation" is also defined in a regulation promulgated by the California Fair Employment and Housing Commission (Cal. Code Regs., tit. 2, § 7293.9) as follows:

"Any employer or other covered entity shall make reasonable accommodation to the disability of any individual with a disability if the employer or other covered entity knows of the disability, unless the employer or other covered entity can demonstrate that the accommodation would impose an undue hardship.

"(a) Examples of Reasonable Accommodation. Reasonable accommodation may, but does not necessarily, include, nor is it limited to, such measures as:

"(1) *Accessibility. Making existing facilities used by employees readily accessible to and usable by individuals with disabilities;*

"(2) Job Restructuring. Job restructuring, reassignment to a vacant position, part-time or modified work schedules, *acquisition or modification of equipment or devices,* adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar actions.

"(b) 'Undue hardship' means an action requiring significant difficulty or expense, when considered in light of the following factors:

"(1) the nature and cost of the accommodation needed;

"(2) the overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility;

"(3) the overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type, and location of its facilities;

"(4) the type of operations, including the composition, structure, and functions of the workforce of the entity;

"(5) the geographic separateness, administrative, or fiscal relationship of the facility or facilities.

"(c) Accessibility Standards. To comply with Section 7293.9(a), the design, construction or alteration of premises shall be in conformance with the

standards set forth by the Division of the State Architect in the State Building Code, Title 24, pursuant to Chapter 7 (commencing with Section 4450), Division 5 of Title 1 of the Government Code and Part 5.5 (commencing with Section 19955) and Division 13 of the Health and Safety Code." (Cal. Code Regs., tit. 2, § 7293.9, italics added.)

██  Plaintiff pleaded that, "[a]s a result of severe polio and post polio, Plaintiff is a disabled individual who is unable to walk long distances. Plaintiff was substantially impaired in her ability to move around her work site as needed and to transport herself from her car to her work station." Plaintiff contends that her request for motorized transportation from her parked car to her work station, for motorized transportation within her work site, and for handrailings or chairs along the hallways of the jobsite, constitute requests for reasonable accommodations in that these requests were for the purpose of "[m]aking existing facilities used by employees readily accessible to, and useable by, individuals with disabilities" and constituted the "acquisition or modification of equipment or devices" as described in subdivision (n) of section 12926 and in the aforementioned regulation. We agree that plaintiff's complaint adequately pleads a request for accommodation of her disability.

Moreover, plaintiff has pleaded that the accommodations she sought were "reasonable" within the meaning of the FEHA statutes. Although subdivision (m) of section 12940 does not require an employer to provide an accommodation that would produce "undue hardship to its operation," a plaintiff need not initially plead or produce evidence showing that the accommodation would not impose an undue hardship on the employer; rather, the burden is on the employer to make a showing of undue hardship. (*County of Fresno v. Fair Employment & Housing Com.* (1991) 226 Cal.App.3d 1541, 1553 [277 Cal.Rptr. 557].)

Finally, we note that the complaint pleads that plaintiff's physical disability was "known" by the employer as required by subdivision (m) of section 12940. Thus, plaintiff has pleaded that the Department knew that she suffered from polio, that she requested reasonable accommodation, that the Department denied her request for reasonable accommodation, and that she was injured "as a direct result" thereof.

██  In sum, plaintiff has adequately pleaded that the Department engaged in an unlawful employment practice under subdivision (m) of section 12940 and that she suffered injury and damages as a result of the unlawful employment practice.

As we shall explain, these allegations suffice to allow plaintiff to bring a civil action for damages.

Remedies for violation of the FEHA are set out in section 12965. Section 12965 states in relevant part in subdivision (a) that "[i]n the case of failure to eliminate *an unlawful practice under this part* through conference, [etc.] . . . the director in his or her discretion may cause to be issued in the name of the department a written accusation." (Italics added.)

Subdivision (b) of section 12965 provides in relevant part, "If an accusation is not issued within 150 days after the filing of a complaint, or if the department earlier determines that no accusation will issue, the department shall promptly notify, in writing, the person claiming to be aggrieved that the department shall issue, on his or her request, the right-to-sue notice. This notice shall indicate that the person claiming to be aggrieved may bring a civil action under this part against the person, employer, labor organization, or employment agency named in the verified complaint within one year from the date of that notice. If the person claiming to be aggrieved does not request a right-to-sue notice, the department shall issue the notice upon completion of its investigation, and not later than one year after the filing of the complaint. . . . The superior and municipal courts of the State of California shall have jurisdiction of those actions, and the aggrieved person may file in any of these courts. Such an action may be brought in any county in the state *in which the unlawful practice is alleged to have been committed,* in the county in which the records relevant to the practice are maintained and administered, or in the county in which the aggrieved person would have worked or would have had access to the public accommodation *but for the alleged unlawful practice,* but if the defendant is not found within any of these counties, an action may be brought within the county of the defendant's residence or principal office." (Italics added.)

Section 12965 authorizes the filing of a civil action based upon "an unlawful practice." Nothing in section 12965 limits such an unlawful practice to the unlawful practice of disability discrimination found in subdivision (a) of section 12940. As we have explained, subdivision (m) of section 12940, outlawing the failure to provide reasonable accommodation, is statutorily defined as a separate unlawful employment practice. Section 12965 therefore authorizes the filing of a civil action based on that unlawful practice provided a plaintiff has obtained a right-to-sue notice. (See *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 256 [102 Cal.Rptr.2d 55] (*Jensen*).) In paragraph 18 of her complaint, plaintiff pleads she has obtained such a notice. The instant civil action for damages is therefore authorized by section 12965. (See *Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 221 [185 Cal.Rptr. 270, 649 P.2d 912]; *Jensen, supra,* 85 Cal.App.4th at p. 256.)

We therefore conclude that plaintiff's second amended complaint states facts sufficient to constitute a cause of action, and the trial court erred in sustaining the Department's demurrer without leave to amend.

## III

*The Department's Arguments in Support of the Demurrer Are Unpersuasive*

A. *An interpretive statement of the federal Equal Employment Opportunity Commission (EEOC), interpreting the federal Americans with Disabilities Act (ADA) should not be used to interpret the FEHA.*

The Department relies principally on *Brundage v. Hahn* (1997) 57 Cal.App.4th 228 [66 Cal.Rptr.2d 830] (*Brundage*), where the court applied an interpretive statement of the federal EEOC, construing the ADA, to define the scope of reasonable accommodation under the FEHA. Thus, in *Brundage*, the court said: "The Equal Employment Opportunity Commission's interpretive statement explains that '[t]here are three categories of reasonable accommodation. These are (1) accommodations that are required to ensure equal opportunity in the application process; (2) accommodations that enable the employer's employees with disabilities to perform the essential functions of the position held or desired; and (3) accommodations that enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities.' (29 C.F.R. pt. 1630, appen. to § 1630.2(*o*) (1996).)" (*Brundage, supra,* at p. 239.)

■ The Department argues the plaintiff's complaint cannot satisfy the requirements of this interpretive statement because she has not pleaded that she was denied equal opportunity in the application process, that she could not perform the essential functions of the position held or desired, or that she failed to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities.

For reasons that follow, we shall conclude that this interpretive statement of the EEOC, interpreting the federal ADA should not be applied to California's FEHA.

■ The operative principle is that a federal regulation may be "useful" to guide the construction of the FEHA *where the state statute or an interpretive state regulation are modeled on the ADA. (Cassista v. Community Foods, Inc., supra,* 5 Cal.4th at p. 1063.)

■ Here, however, the interpretive statement of the EEOC is based upon ADA provisions that differ in important material respects from the applicable FEHA provision. As we shall explain, the applicable FEHA provision is not sufficiently "modeled on" the ADA provision to allow the EEOC regulation to control the meaning given the FEHA.

Thus, read in its entirety, the interpretive statement of the EEOC provides as follows: "An individual is considered a 'qualified individual with a disability' if the individual can perform the essential functions of the position held or desired with or without reasonable accommodation. In general, an accommodation is any change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities. There are three categories of reasonable accommodation. These are (1) accommodations that are required to ensure equal opportunity in the application process; (2) accommodations that enable the employer's employees with disabilities to perform the essential functions of the position held or desired; and (3) accommodations that enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities." (29 C.F.R. pt. 1630, appen to § 1630.2(*o*) (2001).)

The interpretive statement therefore makes clear that the categories of reasonable accommodation are derived from a federal ADA statute defining "a qualified individual with a disability."

The federal statute at issue is 42 United States Code section 12112, which provides in relevant part as follows:

"(a) General rule [¶] No covered entity shall discriminate *against a qualified individual with a disability* because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment.

"(b) Construction [¶] As used in subsection (a) of this section, the term 'discriminate' includes— [¶] . . . [¶]

"(5)(A) [N]ot making reasonable accommodations to the known physical or mental limitations *of an otherwise qualified individual with a disability* who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; . . ." (Italics added.)

Title 42 United States Code section 12112 must be read in conjunction with the definition of "qualified individual with a disability" found in 42 United States Code section 12111, as follows: "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the

purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."

The important things to note about these ADA provisions are:

1. The duty of reasonable accommodation under 42 United States Code section 12112 is defined as an instance of discrimination "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions and privileges of employment."

2. Under 42 United States Code section 12112, an employer has a duty to make reasonable accommodation only to a "qualified individual with a disability," which is defined in 42 United States Code section 12111 as someone who can perform the essential functions of the employment position that such individual holds or desires.

These statutory provisions lead to the conclusion that, "[t]o state a prima facie case under the ADA, a plaintiff must prove that he is a qualified individual with a disability who suffered an adverse employment action because of his disability. [Citations.]" (*Sanders v. Arneson Products, Inc.* (9th Cir. 1996) 91 F.3d 1351, 1353; see also *Doe v. Dekalb County School Dist.* (11th Cir. 1998) 145 F.3d 1441, 1445.)

These statutory provisions also animated the interpretive statement of the EEOC, discussed above, and applied to the FEHA in *Brundage, supra,* 57 Cal.App.4th at page 239.

However, the FEHA provision requiring reasonable accommodation is markedly different from the ADA. Thus, subdivision (m) of section 12940, defining the duty to make reasonable accommodation, does not require that an employee be "a qualified individual with a disability" as does the federal statute. Rather, subdivision (m) of section 12940 applies simply to "an applicant or employee." Moreover, subdivision (m) of section 12940 does not link the failure to make reasonable accommodation to discrimination in the terms and conditions of employment, as does the ADA. Thus, the FEHA prohibition on discrimination in employment is found in section 12940, subdivision (a). (See appen. A, *post.*) The duty to provide reasonable accommodation is set forth in a separate subdivision (m) of equal dignity under section 12940. There is a linguistic link between subdivision (m) and

subdivision (a) of section 12940, but the link concerns only the question whether an accommodation constitutes a hardship: "Nothing in this subdivision [m] or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operation." (See appen. A, *post*.) Subdivision (m) therefore defines a separate and distinct unfair employment practice independent of subdivision (a). (See *Jensen, supra,* 85 Cal.App.4th at p. 256.) Thus, unlike the federal ADA provisions, subdivision (m) does not require that reasonable accommodation for disability be made only where the person is "a qualified individual" able to perform the essential functions of the job as defined in 42 United States Code section 12111, nor is there any requirement in subdivision (m) that the employee has a right to assert the duty of reasonable accommodation only where some kind of adverse employment action is taken against the employee.[4] Thus, the California regulation of the Fair Employment and Housing Commission interpreting the duty to provide reasonable accommodation (Cal. Code Regs., tit. 2, § 7293.9), which we have quoted above, correctly contains none of the limitations on reasonable accommodation found in the EEOC interpretive statement.

From the foregoing, it appears that the interpretive statement of the federal EEOC, relied upon by the Department, is derived from federal ADA provisions that contain restrictions and qualifications on the duty to make reasonable accommodation that are not found in the FEHA. In construing the FEHA, our Supreme Court and various courts of appeal have recognized that federal authority interpreting title VII of the Civil Rights Act of 1964 (42

---

[4]In *Jensen, supra,* 85 Cal.App.4th 245, the court held that establishing an adverse employment action was irrelevant to an employee's claim asserted under then subdivision (k) (now subd. (m)) of section 12940. With this much of *Jensen* we agree.

However, the *Jensen* court also said, "[t]he elements of a failure to accommodate claim are similar to the elements of a . . . section 12940, subdivision (a) discrimination claim, but there are important differences. The plaintiff must, in both cases, establish that he or she suffers from a disability covered by FEHA and that he or she is a qualified individual. For purposes of a section 12940, subdivision (k) claim, the plaintiff proves he or she is a qualified individual by establishing that he or she can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position. (See, e.g., *Smith v. Midland Brake, Inc.* (10th Cir. 1999) 180 F.3d 1154, 1161-1162; *AKA v. Washington Hosp. Center* (D.C. Cir. 1998) 156 F.3d 1284, 1300-1301 [332 App.D.C. 256].)" (*Jensen, supra,* 85 Cal.App.4th at p. 256.)

We respectfully disagree with *Jensen* to the extent it holds that, in order to assert a claim for failure to accommodate, a plaintiff must show that he or she is "a qualified individual" within the meaning of 42 United States Code section 12111. *Jensen* cites no apposite authority for that assertion, which, as we have explained, finds no reference in the FEHA statute or applicable regulation. The two federal cases cited by *Jensen* do not mention the FEHA but are rather interpretations of the ADA where, as we have seen, "a qualified individual with a disability" is given express statutory definition.

U.S.C. § 2000e et seq. (title VII)) is not persuasive where the statutory language of the FEHA differs markedly from title VII. (See *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 498-499 [59 Cal.Rptr.2d 20, 926 P.2d 1114]; *Page v. Superior Court* (1995) 31 Cal.App.4th 1206, 1215-1216 [37 Cal.Rptr.2d 529]; *Johnson Controls, Inc. v. Fair Employment & Housing Com.* (1990) 218 Cal.App.3d 517, 539-540 [267 Cal.Rptr. 158]; *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 606 [262 Cal.Rptr. 842].)

This principle applies equally to interpretations of the ADA that are proffered to interpret the FEHA. Here, as we have explained, the ADA provisions defining reasonable accommodation are materially different from the FEHA provision, and the interpretive EEOC statement relied on by the Department incorporates statutory restrictions on the duty to accommodate that are simply not found in the FEHA. Consequently, we respectfully disagree with *Brundage, supra,* 57 Cal.App.4th at page 239, to the extent that court adopted the interpretive EEOC statement to define reasonable accommodation under the FEHA. Rather, the duty of reasonable accommodation under the FEHA should be construed according to our own state regulation, adopted by the Fair Employment and Housing Commission, which we have described above. (Cal. Code Regs., tit. 2, § 7293.9.)[5] As we have said, the allegations of plaintiff's complaint meet all the requirements of the applicable state regulation.

This means that the duty of an employer to provide reasonable accommodation for an employee with a disability is broader under the FEHA than under the ADA. This is entirely consistent with the intent of the Legislature. Thus, for example, section 12926.1 provides in relevant part: "The Legislature finds and declares as follows: (a) The law of this state in the area of disabilities provides protections independent from those in the federal Americans with Disabilities Act of 1990 (Public Law 101-336). Although the federal act provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections." Moreover, the language related to reasonable accommodation, now found in subdivision (m) of section 12940, was added (as subd. (k) of § 12940) by section 23.1 of chapter 913 of Statutes 1992 at page 4316. Section 1 of that chapter (913) provides: "It is the intent of the Legislature in enacting this act to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990 (Public Law 101-336) and to retain California

---

[5]Although not relied upon by the Department, we note that a federal regulation of the EEOC (29 C.F.R. § 1630.2(*o*) (2002)) contains language defining "reasonable accommodation" that closely tracks the EEOC interpretive statement. For reasons we have explained, this regulation should not be applied to the FEHA.

law when it provides more protection for individuals with disabilities than the Americans with Disabilities Act of 1990."[6] (At p. 4282.)

Finally, we are reminded that section 12993, subdivision (a) commands that, "The provisions of this part [the FEHA] shall be construed liberally for the accomplishment of the purposes of this part." While the result we reach in this case may satisfy the aim of this statute, we do not think our method of statutory construction of the FEHA is "liberal." Rather, we are simply applying the language of the FEHA and the applicable state regulation as they are written according to their ordinary meaning. ■ In the words of Justice Scalia, "I thought we had adopted a regular method for interpreting the meaning of language in a statute: first, find the ordinary meaning of the language in its textual context; and second, using established canons of construction, ask whether there is any clear indication that some permissible meaning other than the ordinary one applies. If not—and especially if a good reason for the ordinary meaning appears plain—we apply that ordinary meaning. [Citations.]" (*Chisom v. Roemer* (1991) 501 U.S. 380, 404 [111 S.Ct. 2354, 2369, 115 L.Ed.2d 348, 369] (dis. opn. of Scalia, J.).)

We recognize that this result will leave employers uncertain with respect to when they must provide reasonable accommodation to disabled employees. However, section 12935, subdivision (a) empowers the Fair Employment and Housing Commission "[t]o adopt, promulgate, amend and rescind suitable rules, regulations, and standards . . . to interpret, implement and apply all provisions of this part [the FEHA] . . . ." Regulatory action to clarify employers' duties is plainly appropriate here. (See *Samura v. Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1298, fn. 5 [22 Cal.Rptr.2d 20].) We think that this solution—calling upon the agency designated by the Legislature to clarify the FEHA—is a better one than importing into the FEHA provisions from the ADA that the Legislature has not seen fit to put there.

B. *Plaintiff's lawsuit is not barred by the exclusive remedy provisions of the Worker's Compensation Act.*

■ The Department contends plaintiff's lawsuit is barred by the exclusive remedy provisions of the Worker's Compensation Act. Thus, in its brief, the Department argues as follows:

■ "Subject to certain narrowly defined exceptions, the WCA provides an employee's exclusive remedy against her employer for injuries arising

---

[6]Recall also that in *Cassista v. Community Foods, Inc., supra,* 5 Cal.4th 1050, our Supreme Court used language in the ADA to interpret the FEHA. However, the Legislature later enacted a statute that rejected the Supreme Court's interpretation of the FEHA and expressly stated that state law was to be "independent" of the ADA. (See fn. 2, *ante.*)

within the course of employment. (*Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465, 467-68 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758].) Labor Code section 3600, a part of the Act, states the exclusive remedy and conditions of compensation that must occur before an employer is liable for an employee's injury: 'Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person . . . shall, without regard to negligence, exist against an employer for *any injury sustained by his or her employees arising out of and in the course of the employment* . . . in those cases where the . . . conditions of compensation occur.' (Emphasis added.) (See also *Bell v. Macy's California* (1989) 212 Cal.App.3d 1442, 1448-49 [261 Cal.Rptr. 447].) Where these conditions occur, workers' compensation is 'the sole and exclusive remedy of the employee . . . against the employer.' (Lab. Code, § 3620; *Pichon v. Pacific Gas & Electric Co.* (1980) 212 Cal.App.3d 488, 494-495 [260 Cal.Rptr. 677].) It is also the exclusive remedy against fellow employees acting within the scope of their employment. (Lab. Code, § 3601.)

"Thus, when the conditions of compensation exist, an employee's sole remedy for the acts of his employer or fellow employees is a claim for workers' compensation benefits. Superior courts are without subject matter jurisdiction to entertain causes of action based on such injuries. (*Dixon v. Ford Motor Co.* (1975) 53 Cal.App.3d 499, 506 [125 Cal.Rptr. 872]; *Williams v. State Compensation Insurance Fund* (1975) 50 Cal.App.3d 116 [123 Cal.Rptr. 812].)

"Labor Code sections 3600(a)(2) and (3) provide that injuries which arise 'Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment' and 'Where the injury is proximately caused by the employment, either with or without negligence,' are subject to workers' compensation.

■■■ "Appellant alleges that the injury at issue occurred while she was acting within the course and scope of her employment. Accordingly, the conditions of compensation exist here, in so far as they relate to appellant's broken leg and subsequent inability to return to work, therefore, appellant's claims are barred by the exclusive jurisdiction of the Workers' Compensation Appeals Board."

However, we shall conclude that the Worker's Compensation Act does not bar plaintiff's FEHA lawsuit for reasons discussed by our Supreme Court in *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143 [77 Cal.Rptr.2d 445, 959 P.2d 752]. Although plaintiff cited and discussed *City of Moorpark*

in her brief, the Department has not discussed the case in its respondent's brief.

In *City of Moorpark,* an administrative secretary had knee surgery and was released by her doctor to return to work. The city manager terminated her employment, informing her that a residual disability prevented her from performing her essential job functions. As pertinent, the plaintiff sued the City of Moorpark alleging a cause of action for disability discrimination in violation of the FEHA.

The City of Moorpark contended the plaintiff's civil lawsuit was barred by the exclusive remedy provisions of the Workers' Compensation Act. In particular, the city contended that the remedy for discrimination provided by Labor Code section 132a was exclusive.[7]

The Supreme Court held that Labor Code section 132a did not provide an exclusive remedy and did not preclude an employee from pursuing her FEHA claims in court. (*City of Moorpark v. Superior Court, supra,* 18 Cal.4th at p. 1158.) As we shall explain, some of the court's reasoning does not support plaintiff's position in this case; however, most of the court's analysis favors plaintiff's right to bring this lawsuit.

The *City of Moorpark* court first explained that the exclusive remedy provision of Labor Code section 3600, subdivision (a) is limited to " '[l]iability for the compensation provided *by this division* . . . .' " (*City of Moorpark v. Superior Court, supra,* 18 Cal.4th at p. 1154.) The court continued, "When section 3600 refers to 'this division,' it refers to division 4 of the Labor Code. Section 132a, on the other hand, is in division 1 of the Labor Code. . . . Thus, the plain language of the exclusive remedy provisions of the workers' compensation law apparently limits those provisions to division 4 remedies. Remedies that the Legislature placed in other divisions of the Labor Code are simply not subject to the workers' compensation exclusive remedy provisions." (*City of Moorpark, supra,* 18 Cal.4th at pp. 1154-1155.)

---

[7]As quoted in *City of Moorpark,* Labor Code section 132a provided: " 'It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment. [¶] (1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file a claim for compensation with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars . . . , together with costs and expenses not in excess of two hundred fifty dollars . . . . Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer.' " (*City of Moorpark v. Superior Court, supra,* 18 Cal.4th at p. 1150.)

This reason for avoiding the exclusive remedy provisions of the Workers' Compensation Act does not favor plaintiff. The FEHA cause of action at issue in *City of Moorpark* was for *discrimination* based on disability. It was plaintiff's claim for *discrimination* that placed the claim ostensibly within the confines of Labor Code section 132a. And it was Labor Code section 132a that was held to be not an exclusive remedy.

In this case, and contrary to the assertions of her brief, plaintiff does not fairly allege a cause of action for disability discrimination. Disability discrimination is defined by subdivision (a) of section 12940 (see appen. A, *post*) and, as pertinent, outlaws discrimination against the person "in compensation or in terms, conditions, or privileges of employment." Plaintiff has not alleged such discrimination, because she has not properly pleaded that she was denied compensation or that an adverse employment action was taken against her.[8] Rather, as we have discussed, plaintiff has fairly pleaded a claim for damages premised on failure to make reasonable accommodation in violation of subdivision (m) of section 12940. Because plaintiff has not pleaded a disability discrimination claim, her lawsuit is not ostensibly subject to the antidiscrimination provisions of Labor Code section 132a but is rather for physical injuries suffered in the course of her employment. Consequently, to the extent that our Supreme Court rested its decision in *City of Moorpark* on the statutory construction of the Workers' Compensation Act that we have recited above, that ground of the decision does not aid plaintiff.

However, the statutory construction of Labor Code section 132a was not the entire basis of the Supreme Court's decision in *City of Moorpark*. Rather, it was just the beginning.

Thus, in *City of Moorpark*, the court went on to explain that disability discrimination "falls outside the compensation bargain and workers' compensation is not the exclusive remedy." (*City of Moorpark v. Superior Court*, *supra*, 18 Cal.4th at p. 1155.) As we have explained, in section 12940 the Legislature has made the failure to accommodate a disability equally as important as disability discrimination. We see no reason to do otherwise. Just as discrimination on the basis of disability falls outside the compensation bargain, so too the employer's commission of another statutory unlawful

---

[8]In paragraph 19 of her complaint, plaintiff pleads that "Defendants limited, segregated or classified the Plaintiff in a way that adversely affected her opportunities for employment. Defendants also excluded or otherwise denied equal jobs or benefits or opportunities to the Plaintiff as a qualified individual because of known disabilities of the Plaintiff." These conclusionary allegations, which allege no specific acts, are insufficient to survive demurrer. (*Appl v. Lee Swett Livestock Co.* (1987) 192 Cal.App.3d 466, 470 [237 Cal.Rptr. 433]; *Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954 [234 Cal.Rptr. 717]; *Ankeny v. Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 537 [151 Cal.Rptr. 828].)

employment practice, as defined by subdivision (m) of section 12940, falls outside the compensation bargain. This ground of the Supreme Court's decision in *City of Moorpark* therefore supports plaintiff in this case.

As additional reasons for finding the Workers' Compensation Act not an exclusive remedy for the plaintiff in *City of Moorpark*, the court discussed the policies of the FEHA as follows:

"The provisions of the FEHA, and our decisions interpreting it, further support our conclusion that section 132a is not exclusive. The FEHA broadly announces 'the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical disability [or] mental disability . . . .' (. . . § 12920.) The FEHA further provides that '[i]t shall be an unlawful employment practice . . . [¶] . . . [f]or an employer, because of the . . . physical disability [or] mental disability . . . of any person, to . . . discriminate against the person . . . .' (. . . § 12940, subd. (a).) Nothing in these provisions suggests that the FEHA only applies to physical or mental disabilities that are unrelated to work. Moreover, the FEHA declares that its 'provisions . . . shall be construed liberally for the accomplishment of the purposes thereof.' (. . . § 12993, subd. (a).) A construction of section 12940, subdivision (a), that narrows the term 'disability' to disabilities unrelated to work seems inconsistent with the principle of liberal construction.

"Furthermore, our decisions have consistently emphasized the breadth of the FEHA. In *State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422 [217 Cal.Rptr. 16, 703 P.2d 354], we considered whether the FEHA covered state civil service employees despite similar antidiscrimination provisions in the Civil Service Act. (See . . . § 19702, subd. (a).) We concluded that '[t]he FEHA was meant to supplement, *not . . . be supplanted by*, existing antidiscrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination . . . .' (*State Personnel Bd.* v. *Fair Employment & Housing Com.*, *supra*, 39 Cal.3d at p. 431, italics added.) Similarly, in *Rojo* [v. *Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373]], we considered whether victims of sex discrimination could bring common law wrongful discharge claims in addition to FEHA claims. We concluded that the Legislature intended the FEHA 'to amplify' (*Rojo*, *supra*, 52 Cal.3d at p. 75) other remedies and 'to expand' (*id.* at p. 80) the rights of persons who are victims of employment discrimination. (See also *Jennings* v. *Marralle* (1994) 8 Cal.4th 121, 135 [32 Cal.Rptr.2d 275, 876 P.2d 1074] [The Legislature intended 'to create new rights within the FEHA statutory scheme while

leaving existing rights intact . . . .'].) None of these cases suggests that non-FEHA remedies circumscribe the scope of the FEHA.

"Finally, the public education provisions of the workers' compensation law support our conclusion that section 132a is not exclusive. Labor Code section 139.6 provides: '(a) The administrative director shall establish and effect within the Division of Workers' Compensation a continuing program to provide information and assistance concerning the rights, benefits, and obligations of the workers' compensation law to employees and employers subject thereto. The program shall include, but not be limited to, the following: [¶] . . . [¶] (2) The preparation, publishing, and as necessary, updating, of a pamphlet advising injured workers of their basic rights under workers' compensation law, *and informing them of rights under . . . the provisions of the Fair Employment and Housing Act relating to individuals with a disability.*' (Italics added.) This legislative mandate to inform 'injured workers' of their FEHA rights would make little sense if section 132a provided an injured worker's exclusive remedy for disability discrimination." (*City of Moorpark v. Superior Court, supra*, 18 Cal.4th at pp. 1156-1158.)

This discussion by our Supreme Court of the FEHA applies strongly in plaintiff's favor in this case.

On balance, we conclude that the Supreme Court's analysis in *City of Moorpark* supports the view that the Workers' Compensation Act does not provide the exclusive remedy for plaintiff's FEHA claim. (See also *Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1484-1486 [82 Cal.Rptr.2d 359].) The Department's argument to the contrary is not meritorious.

C.   *It cannot be determined on demurrer whether plaintiff's requested accommodation is unreasonable.*

■   The Department argues that plaintiff's requested accommodation is not reasonable on its face. The Department asserts "Appellant's request for a motorized wheelchair is a request for a personal item not required to be provided by the Department." However, plaintiff's complaint alleged, "Her job duties required her to transport herself long distances within the work site and to travel to and from the work site." She also alleged, "plaintiff requested a reasonable accommodation of her disability in the form of motorized transportation from her parked car to her work station and motorized transportation within her work site." These allegations suffice to plead that plaintiff's requested accommodation was not personal but was work

related. And, as we have recounted, the applicable state regulation includes "acquisition . . . of equipment or devices" as an example of a reasonable accommodation. (Cal. Code Regs., tit. 2, § 7293.9.) Moreover, plaintiff pleaded that the Department refused to provide handrailing or chairs along the hallway of the job site to aid plaintiff in transporting herself around the site. These latter items are not personal items.

As we have mentioned, the burden is on the employer to show that a requested accommodation would constitute a hardship. (*County of Fresno v. Fair Employment & Housing Com., supra,* 226 Cal.App.3d at p. 1553.) It cannot be determined on demurrer whether plaintiff's requested accommodations were reasonable, on the one hand, or constituted an undue hardship to the employer, on the other. The Department's argument to the contrary is not meritorious.

## IV

*Other Allegations in Paragraph 19 of Plaintiff's Complaint Do Not State a Cause of Action*

In paragraph 19 of her complaint, plaintiff alleges: "Defendants created an unbearable and hostile work environment by singling out Plaintiff, telling Plaintiff to just retire when she would request an accommodation, and circulating an inflammatory and libelous e-mail to at least 47 employees impugning Plaintiff."

In her brief, plaintiff does not show how these allegations state a cause of action. Rather, she says, "The crux of Ms[.] Bagatti's complaint is that respondents failed to provide reasonable accommodation of her disability."

The burden is on an appellant of affirmatively showing error by the trial court. (*Santa Clara County Environmental Health Assn. v. County of Santa Clara* (1985) 173 Cal.App.3d 74, 83-84 [218 Cal.Rptr. 678].) Plaintiff has not shown how the aforementioned allegations of paragraph 19 state a cause of action. Consequently, we presume the demurrer was properly sustained as to those allegations, and plaintiff shall not proceed on those claims in the trial court.

## V

### CONCLUSION

For the foregoing reasons, we conclude that some allegations in paragraph 19 of plaintiff's complaint do not state a cause of action. However, other

allegations in the complaint show that plaintiff has pleaded a valid claim for damages under the FEHA and that the trial court erred in sustaining the demurrer to her second amended complaint without leave to amend.[9] In light of this conclusion, we have no need to address plaintiff's requests to amend her complaint.

## DISPOSITION

To the extent the trial court sustained a demurrer without leave to amend to the allegations of paragraph 19 described in part IV of the opinion, the judgment is affirmed. The judgment is otherwise reversed. Plaintiff shall recover her costs on appeal. (Cal. Rules of Court, rule 26(a).)

Callahan, J., and Hull, J., concurred.

---

[9]The Department does not contend that plaintiff was required to file a government claim (§ 905.2) before bringing suit; consequently we do not consider the matter.

APPENDIX A

Government Code section 12940 provides in its entirety as follows:

"It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

"(a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

"(1) This part does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee with a physical or mental disability, where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations.

"(2) This part does not prohibit an employer from refusing to hire or discharging an employee who, because of the employee's medical condition, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger the employee's health or safety or the health or safety of others even with reasonable accommodations. Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her essential duties, or cannot perform those duties in a manner that would not endanger the employee's health or safety or the health or safety of others even with reasonable accommodations.

"(3) Nothing in this part relating to discrimination on account of marital status shall do either of the following:

"(A) Affect the right of an employer to reasonably regulate, for reasons of supervision, safety, security, or morale, the working of spouses in the same

department, division, or facility, consistent with the rules and regulations adopted by the commission.

"(B) Prohibit bona fide health plans from providing additional or greater benefits to employees with dependents than to those employees without or with fewer dependents.

"(4) Nothing in this part relating to discrimination on account of sex shall affect the right of an employer to use veteran status as a factor in employee selection or to give special consideration to Vietnam era veterans.

"(b) For a labor organization, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or sexual orientation of any person, to exclude, expel or restrict from its membership the person, or to provide only second-class or segregated membership or to discriminate against any person because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or sexual orientation of the person in the election of officers of the labor organization or in the selection of the labor organization's staff or to discriminate in any way against any of its members or against any employer or against any person employed by an employer.

"(c) For any person to discriminate against any person in the selection or training of that person in any apprenticeship training program or any other training program leading to employment because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or sexual orientation of the person discriminated against.

"(d) For any employer or employment agency to print or circulate or cause to be printed or circulated any publication, or to make any non-job- related inquiry of an employee or applicant, either verbal or through use of an application form, that expresses, directly or indirectly, any limitation, specification, or discrimination as to race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or sexual orientation, or any intent to make any such limitation, specification or discrimination.

"(e)(1) Except as provided in paragraph (2) or (3), for any employer or employment agency to require any medical or psychological examination of an applicant, to make any medical or psychological inquiry of an applicant, to make any inquiry whether an applicant has a mental disability or physical

disability or medical condition, or to make any inquiry regarding the nature or severity of a physical disability, mental disability, or medical condition.

"(2) Notwithstanding paragraph (1), an employer or employment agency may inquire into the ability of an applicant to perform job-related functions and may respond to an applicant's request for reasonable accommodation.

"(3) Notwithstanding paragraph (1), an employer or employment agency may require a medical or psychological examination or make a medical or psychological inquiry of a job applicant after an employment offer has been made but prior to the commencement of employment duties, provided that the examination or inquiry is job-related and consistent with business necessity and that all entering employees in the same job classification are subject to the same examination or inquiry.

"(f)(1) Except as provided in paragraph (2), for any employer or employment agency to require any medical or psychological examination of an employee, to make any medical or psychological inquiry of an employee, to make any inquiry whether an employee has a mental disability, physical disability, or medical condition, or to make any inquiry regarding the nature or severity of a physical disability, mental disability, or medical condition.

"(2) Notwithstanding paragraph (1), an employer or employment agency may require any examinations or inquiries that it can show to be job-related and consistent with business necessity. An employer or employment agency may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that worksite.

"(g) For any employer, labor organization, or employment agency to harass, discharge, expel, or otherwise discriminate against any person because the person has made a report pursuant to Section 11161.8 of the Penal Code that prohibits retaliation against hospital employees who report suspected patient abuse by health facilities or community care facilities.

"(h) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

"(i) For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so.

"(j)(1) For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation, to harass an employee, an applicant, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment.

"(2) The provisions of this subdivision are declaratory of existing law, except for the new duties imposed on employers with regard to harassment.

"(3) An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action.

"(4)(A) For purposes of this subdivision only, 'employer' means any person regularly employing one or more persons or regularly receiving the services of one or more persons providing services pursuant to a contract, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision of the state, and cities. The definition of 'employer' in subdivision (d) of Section 12926 applies to all provisions of this section other than this subdivision.

"(B) Notwithstanding subparagraph (A), for purposes of this subdivision, 'employer' does not include a religious association or corporation not organized for private profit.

"(C) For purposes of this subdivision, 'harassment' because of sex includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions.

"(5) For purposes of this subdivision, 'a person providing services pursuant to a contract' means a person who meets all of the following criteria:

"(A) The person has the right to control the performance of the contract for services and discretion as to the manner of performance.

"(B) The person is customarily engaged in an independently established business.

"(C) The person has control over the time and place the work is performed, supplies the tools and instruments used in the work, and performs work that requires a particular skill not ordinarily used in the course of the employer's work.

"(k) For an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

"(l) For an employer or other entity covered by this part to refuse to hire or employ a person or to refuse to select a person for a training program leading to employment or to bar or to discharge a person from employment or from a training program leading to employment, or to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with his or her religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship on the conduct of the business of the employer or other entity covered by this part. Religious belief or observance, as used in this section, includes, but is not limited to, observance of a Sabbath or other religious holy day or days, and reasonable time necessary for travel prior and subsequent to a religious observance.

"(m) For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or ( 2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operation.

"(n) For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.

"(o) For an employer or other entity covered by this part, to subject, directly or indirectly, any employee, applicant, or other person to a test for the presence of a genetic characteristic."