Filed 9/6/24; Certified for Publication 9/23/24 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| MARIA MILLER, | |
|     Plaintiff and Appellant, | E081230 |
| v. | (Super.Ct.No. CVRI2000221) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | OPINION |
|     Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. Harold Hopp, Judge. Affirmed.

David A. Kaufman, for plaintiff and appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, and Celine M. Cooper and Vanessa W. Mott, Deputy Attorney Generals, for defendant and respondent.

1

# I. INTRODUCTION

Plaintiff and appellant, Maria Miller, has been employed as a correctional officer with the California Department of Corrections and Rehabilitation (CDCR) at the California Institute for Women (CIW) since 2008. In 2016, she was injured as the result of a slip and fall incident while working off-site in a temporary assignment assisting with officer recruitment. In 2018, CDCR placed plaintiff on an unpaid leave of absence shortly after her wage replacement benefits in the worker's compensation system were exhausted. Eventually, CDCR offered to medically demote[1] plaintiff to an alternative available position that would accommodate her work restrictions. However, plaintiff did not accept the position offered, informed CDCR that she suffered from a previously undisclosed mental disability that prevented her from returning to work while receiving treatment, and has remained on an unpaid leave of absence since that time.

In 2020, plaintiff filed suit against CDCR under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900, et seq.),[2] alleging, in part, disability discrimination, failure to accommodate, failure to engage in the interactive process, failure to prevent discrimination, and retaliation. The trial court granted summary judgment in favor of CDCR after concluding that it was entitled to summary adjudication

---

[1] As relevant to this case, the phrase "medical demotion" refers to the process of placing an employee who is no longer capable of performing the essential functions of the employee's current position into another position that the employee is qualified to perform, with a corresponding right to reinstatement if the employee's medical condition improves.

[2] Undesignated statutory references are to the Government Code.

of each cause of action asserted in the operative complaint. Plaintiff appeals from the judgment, arguing that the evidence produced in opposition to CDCR's motion shows a dispute of material fact sufficient to preclude summary adjudication of each cause of action. We find no error in the record before us and affirm the judgment.

## II. BACKGROUND

*A. Operative Complaint*

According to the operative complaint, plaintiff was an employee of CDCR working at CIW when she became disabled due to a work-related injury in June 2016. In July 2018, CDCR placed plaintiff on unpaid leave, did not offer her any alternative positions that could have accommodated her disability, and did not offer to "apply for retirement benefits . . . through CalPers"[3] on her behalf. Instead, plaintiff was left on unpaid leave while CDCR purported to engage in the interactive process.

Based upon these allegations, plaintiff asserted seven causes of action for violation of the FEHA: (1) disability discrimination (§ 12940, subd. (a)); (2) failure to engage in the interactive process (§ 12940, subd. (n)); (3) failure to provide reasonable accommodation (§ 12940, subd. (m)(1)); (4) failure to prevent discrimination (§ 12940, subd. (k)); (5) retaliation; (6) constructive wrongful termination; and (7) failure to apply for disability retirement in lieu of termination in violation of section 21153. However, for reasons undisclosed in the record, plaintiff voluntarily dismissed her sixth cause of

---

[3] California Public Employees Retirement System (PERS).

3

action for constructive wrongful termination and seventh cause of action for failure to comply with section 21153.

*B. CDCR's Motion for Summary Judgment and/or Summary Adjudication*

On October 5, 2022, CDCR filed a motion requesting the trial court grant summary judgment on the complaint or, in the alternative, grant summary adjudication as to each of the five causes of action that had not been voluntarily dismissed by plaintiff.

1. <u>Undisputed Facts</u>

In support of summary judgment, CDCR presented 73 facts, 29 of which were undisputed by plaintiff in her responsive separate statement. The parties did not dispute that plaintiff began working as a correctional officer at CDCR in 2008; was laid off for a period of time in 2012 due to state budget cuts; but was reinstated as a correctional officer at CIW in 2013. It was undisputed that plaintiff incurred physical injury after a slip and fall incident in June 2016; that she did not return to work while receiving treatment for her injuries; that she received wage replacement benefits through June 2018 while on leave receiving treatment; and she was placed on an unpaid leave of absence in July 2018.

It was undisputed that in August 2018, plaintiff's physician determined that she had reached maximum medical improvement and that plaintiff would be subject to permanent work restrictions as a result. These restrictions precluded lifting, pushing, or pulling items over 30 pounds in weight; repetitive bending, twisting, or stooping; and

4

kneeling or squatting.[4]  It was further undisputed that the essential functions of a CDCR correctional officer require the physical ability to run, climb, lift and carry, stoop, crawl and crouch, push and pull, brace, and twist.  Finally, plaintiff did not dispute that she claims to be disabled as the result of both her physical injuries and the impact that her physical injuries have subsequently had on her mental health.

    2.  <u>Declaration and Testimony of CDCR Return to Work Coordinator</u>

In support of its motion, CDCR presented the declaration and excerpts from the deposition testimony of a manager in the "Return to Work Section" of its office of employee health and wellness.  The manager explained that in July 2018 plaintiff was placed on an unpaid leave of absence because her wage replacement benefits had been exhausted, but she had yet to inform CDCR whether she was medically cleared to return to work.  Plaintiff was advised that this was only a temporary designation until the parties could determine her ability to return to work.

In August 2018 CDCR was informed that plaintiff's treating physician had determined she would be subject to permanent work restrictions, which were inconsistent with the essential functions of a correctional officer.  Based upon her permanent restrictions, plaintiff requested that CDCR file for industrial disability retirement benefits on her behalf.  However, the manager explained that CDCR only pursues disability retirement after it has exhausted all potential options that might permit an employee to return to work.  The manager also explained that because plaintiff's restrictions were

---

    **4**  Plaintiff purported to dispute the nature of her permanent physical restrictions only to the extent that it implied she was unable to perform any work.

5

permanent, a return to work on "light duty" was not appropriate because "light duty" is considered only a temporary assignment.

In December 2018, plaintiff agreed to accept a medical demotion and placement in an alternative position as an accommodation that would permit her to return to work. After obtaining plaintiff's consent to proceed with a medical demotion, CDCR identified three potential positions for which plaintiff was qualified and offered to medically demote plaintiff to the position that had the highest salary. However, plaintiff failed to appear for two "meet and greet" orientations that CDCR scheduled for her in January 2019 pertaining to this new position.

Instead, plaintiff informed CDCR that she had begun mental health treatment, had filed a new worker's compensation claim for stress related to her physical injury and that her treating psychologist had determined she was unable to work while receiving treatment for her mental health condition. Plaintiff has remained employed with CDCR on an unpaid leave of absence while undergoing treatment for her mental health condition.

3. Plaintiff's Deposition Testimony

CDCR also produced excerpts from plaintiff's deposition testimony in support of its motion. According to plaintiff, she was diagnosed with fibromyalgia as a result of her fall in 2016, causing her to experience pain in her back, knee, ankle, and shoulder. She also claimed to experience migraines, stress, anxiety, and depression as a result of her injuries. Plaintiff admitted that (1) her physical injury rendered her unable to accomplish various physical tasks required for working as a correctional officer; (2) she is "unable to

6

perform the essential functions of a CDCR Correctional Officer because of [her] restrictions"; (3) the medical documentation she submitted to CDCR since 2019 recommended that she be placed completely off work due to her mental health conditions; and (4) she has continued to submit medical reports indicating she needed to remain off work entirely.

Plaintiff acknowledged that she received written correspondence from CDCR in May 2018, requesting that plaintiff notify CDCR of how she would like to address her return to work and listing potential options for plaintiff's consideration. She conceded that CDCR sent her the same correspondence in August 2018; that CDCR notified her it might proceed without her input if she failed to respond; and that she received additional follow-up communications in September and October 2018 requesting that she inform CDCR of potential return-to-work options she deemed acceptable. Plaintiff acknowledged that in November 2018 CDCR confirmed that she remained an employee of CDCR, that her status on unpaid leave was intended to be temporary, but that CDCR could not move forward until plaintiff indicated which of the multiple options offered might be acceptable to her.

Plaintiff testified that in November 2018 she identified three options that would be acceptable to her: (1) for CDCR to apply for retirement disability on plaintiff's behalf; (2) for CDCR to provide her with an alternative job that would accommodate her work restrictions; and (3) for CDCR to provide her with a temporary work assignment at CIW. In response, CDCR informed her that it would move forward with the second option of finding an alternative job that could accommodate plaintiff's work restrictions. Plaintiff

7

responded by indicating that CDCR should proceed with the "medical demotion" as an acceptable accommodation and CDCR confirmed that they would do so in December 2018.

Plaintiff acknowledged that in January 2019 CDCR offered her a medical demotion to work as a personnel specialist. However, plaintiff declined to accept the offer and did not appear for informal orientations regarding the position. Instead, plaintiff informed CDCR that she now suffered from a mental health condition that rendered her incapable of returning to work.

4. Deposition Testimony of Plaintiff's Physician

CDCR attached excerpts from the deposition testimony of the physician who treated plaintiff's physical injuries. The physician confirmed that as of August 2018, he determined that plaintiff had reached "maximum medical improvement" and ordered permanent work restrictions consisting of: (1) no lifting, pushing, or pulling items over 30 pounds; (2) no repetitive bending, twisting, or stooping at the waist; (3) and no kneeling or squatting. He was shown a document outlining the essential work functions of a correctional officer and identified several functions that he believed plaintiff was incapable of performing given her permanent restrictions.

5. Documentary Evidence

CDCR produced multiple documents in support of its motion for summary judgment. It produced an internal document setting forth the essential functions of a correctional officer, confirming that the duties required the ability to frequently lift or carry items between 20 and 50 pounds; climb ladders, multiple flights of stairs or scale

fences; stoop, crawl and crouch; twist in all directions; and push, pull or brace against opposing forces.

It also produced excerpts from CDCR's operations manual. The excerpts confirmed CDCR's policy of filing for disability retirement on behalf of an employee only where "the employee is unable to perform the work of his or her present position, or any other position in the CDCR statewide" and there is no reasonable accommodation available. The excerpts also confirmed that CDCR's standing policy was to assign light or modified duty to officers only on a temporary basis not to exceed specified periods of time.

Finally, CDCR produced copies of its written correspondence and email communications with plaintiff, which confirmed the exchange of communications acknowledged by plaintiff in her deposition testimony. The correspondence included a January 2019 letter from plaintiff's psychologist representing that (1) plaintiff had recently started mental health treatment; (2) plaintiff was "unable to work" as a result of her mental health status; and (3) plaintiff "can't meet with the CDCR coordinator until she's done with her treatment."

*C. Plaintiff's Opposition To Summary Judgment and Summary Adjudication*[5]

In opposition, plaintiff submitted her own declaration in which she acknowledged receiving her first "options letter" from a CDCR return to work coordinator in May 2018

---

[5] The trial court sustained objections to some of the evidence submitted by plaintiff in opposition, and plaintiff has not asserted on appeal that the trial court abused its discretion in doing so. Accordingly, we omit this evidence from our summary. (*Guz*

*[footnote continued on next page]*

but asserted that she was placed on unpaid leave in July 2018 "before [she] could consider the options presented or otherwise suggest alternative accommodations". She acknowledged receiving a second options letter in August 2018 but expressed her opinion that this letter was not sent in good faith. Her declaration further repeatedly criticized the fact that CDCR did not offer to apply for disability retirement on her behalf.

Plaintiff submitted excerpts from her own deposition testimony stating that (1) as a result of being placed on unpaid leave, she was not paid, stopped accruing seniority, was not receiving health benefits, and did not receive a renewed state identification card; (2) she recalled that other officers had been given "light duty" positions as an accommodation; (3) she declined to attend orientation for the alternative position offered to her because it was not at her regular work location and CDCR did not offer to pay for her travel to the new location; and (4) she disagreed with CDCR's decision not to apply for disability retirement on her behalf.

Plaintiff also submitted brief excerpts from the deposition testimony of her treating physician in which he acknowledged that he has never personally witnessed a correctional officer perform any of the duties listed as essential duties. Finally, plaintiff submitted an excerpt from the collective bargaining agreement for correctional peace officers pertaining to CDCR approval of an employee's request for unpaid leave of absence.

---

v. *Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*) [on appeal after a motion for summary judgment has been granted the reviewing court does not consider evidence "to which objections have been made and sustained"]; *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 [same].)

*D. Ruling and Judgment*

On December 19, 2022, the trial court held a hearing on CDCR's motion for summary judgment and summary adjudication; entertained oral argument from both parties; and took the matter under submission. After the hearing, the trial court issued a written order granting summary adjudication on each cause of action in the complaint; and entered judgment in favor of CDCR. Plaintiff appeals from the judgment.

### III. DISCUSSION

*A. Summary Judgment Principles and Standard of Review*

"Summary judgment is appropriately granted when the moving party establishes there is no triable issue of material fact and that it is entitled to judgment as a matter of law." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 683.) "Appellate courts independently review an order granting summary judgment or summary adjudication. [Citation.] In performing this independent review, appellate courts apply the same three-step analysis as the trial court." (*Moreno v. Visser Ranch, Inc.* (2018) 30 Cal.App.5th 568, 578; *Mosley v. Pacific Specialty Insurance Company* (2020) 49 Cal.App.5th 417, 422.) " 'First, we identify the issues framed by the pleadings . . . . [¶] Second[], we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] . . . [Citations.] [T]he third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]' [Citation.] '[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor

11

of the party opposing it.' " (*Mosley*, at pp. 422-423; *Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 732-733.)

In this case, each of the five causes of action upon which CDCR sought summary adjudication are premised upon alleged violations of the FEHA. The "FEHA prohibits several employment practices relating to physical disabilities. First, it prohibits employers from refusing to hire, discharging, or otherwise discriminating against employees because of their physical disabilities. [Citation.] Second, it prohibits employers from failing to make reasonable accommodation for the known physical disabilities of employees. [Citation.] Third, it prohibits them from failing to engage in a timely and good-faith interactive process with employees to determine effective reasonable accommodations." (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 714; § 12940, subds. (a), (m)(1), and (n).) Fourth, it prohibits acts of retaliation against employees who engage in various forms of protected activity associated with its provisions. (*Vines v. O'Reilly Auto Enterprises, LLC* (2022) 74 Cal.App.5th 174, 185; § 12940, subds. (m)(2) and (h).) "Separate causes of action exist for each of these unlawful practices." (*Atkins*, at p. 714.)

Thus, we proceed to independently consider each of the causes of action alleged in the operative complaint under the three-step summary adjudication analysis. However, as we explain, we find no error in the trial court's grant of summary adjudication as to each cause of action based upon the record before us and affirm the judgment.

12

*B. Disability Discrimination*

    1. <u>Issues Framed by the Pleading</u>

The first cause of action set forth in the complaint is for disability discrimination in violation of section 12940, subdivision (a). Section 12940, subdivision (a) prohibits an employer from discriminating against a person "in compensation or in terms, conditions, or privileges of employment" as the result of physical or mental disability. (§ 12940, subd. (a); *Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 925.)

However, "disability discrimination cases often involve direct evidence of the role of the employee's actual or perceived disability in the employer's decision to implement an adverse employment action. Instead of litigating the employer's reasons for the action, the parties' disputes in disability cases focus on whether the employee was able to perform essential job functions, whether there were reasonable accommodations that would have allowed the employee to perform those functions, and whether a reasonable accommodation would have imposed an undue hardship on the employer." (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 34-35 (*Zamora*).) This is because, unlike other forms of discrimination prohibited by section 12940, subdivision (a), the statute "specifically limits the reach" of its proscription against discrimination on the basis of disability, "excluding from coverage those persons who are not qualified, even with reasonable accommodation, to perform essential job duties . . . ." (*Green v. State of California* (2007) 42 Cal.4th 254, 262.) The employer's motive for any alleged adverse employment action becomes subject to scrutiny only after the "employee meets this burden" to show the ability to perform the essential functions of the job. (*Furtado v.*

13

*State Personnel Bd.* (2013) 212 Cal.App.4th 729, 744; *Zamora*, at pp. 34-35 ["whether the employee was able to perform essential job functions" is a "critical threshold issue" in a disability discrimination case].)

Thus, in order to obtain summary adjudication of this cause of action, CDCR could either (1) present evidence to show that its motivation for any adverse employment action was unrelated to plaintiff's alleged disability or (2) present evidence to show that it was not prohibited from taking an adverse employment action because plaintiff's disability rendered her unable to perform the essential duties of her job. (*Green v. State of California*, *supra*, at 262 ["in order to establish that a defendant employer has discriminated on the basis of disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation"]; *Cornell v. Berkeley Tennis Club*, *supra*, 18 Cal.App.5th at p. 926 [plaintiff's prima facie case for disability discrimination requires showing that plaintiff "could perform the essential duties of the job with or without reasonable accommodations"].)

2. CDCR Met Its Initial Burden on Summary Adjudication

In moving for summary adjudication, CDCR did not dispute that it placed plaintiff on an unpaid leave of absence due to her disability.[6]  Instead, CDCR presented evidence

_____

[6] For this reason, plaintiff's discussion of *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 and her arguments pertaining to evidence of CDCR's allegedly discriminatory motive are unavailing.  The framework articulated in *McDonnell Douglas* is intended to evaluate the manner in which the parties may prove or disprove an employer's discriminatory motive in taking an adverse employment action.  (*Guz v.*

*[footnote continued on next page]*

14

in the form of (1) expert medical testimony that plaintiff's permanent restrictions were incompatible with the essential duties of a correctional officer, (2) plaintiff's own testimony admitting that her permanent restrictions rendered her incapable of performing the essential duties of a correctional officer, and (3) plaintiff's own testimony that she has continuously represented to CDCR that she has been unable to return to work while receiving treatment for her mental disability. This was sufficient evidence to show that CDCR was not prohibited from taking adverse employment actions against plaintiff under section 12940, subdivision (a), because plaintiff could not perform the essential duties of her position as a correctional officer. As a result, CDCR met its initial burden on summary adjudication of this cause of action and the burden shifted to plaintiff to produce evidence to show a material dispute of fact.

  3. <u>Plaintiff Failed to Meet Her Corresponding Burden in Opposition</u>

  In opposition, plaintiff did not present any evidence to dispute the essential duties of a correctional officer or any evidence to suggest that her disability-related restrictions would permit her to perform the essential duties of a correctional officer. As a result, plaintiff failed to meet her corresponding burden to produce evidence to show a triable

---

*Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 354; *Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 424.) Thus, in cases involving direct evidence of the employer's motivation for the alleged adverse employment action, the *McDonnell Douglas* framework and the principles adopted to guide its application do not apply. (*see Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 123; *Moore v. Regents of the University of California* (2016) 248 Cal.App.4th 216, 234 at fn. 3.) As we have explained, where an employee's disability renders her unable to perform the essential functions of her job, section 12940, subdivision (a)'s, prohibition against changing the terms, conditions or privileges of employment because of disability does not apply and there is no occasion to scrutinize the employer's motive for taking such actions.

dispute of fact precluding summary adjudication; and the trial court did not err in granting summary adjudication on this cause of action.

On appeal, plaintiff directs our attention to the evidence related to CDCR's purported failure to engage in the interactive process and alleged failure to provide her with a reasonable accommodation. However, "if the defendant's showing negates an essential element of the plaintiff's case, no amount of factual conflict upon other aspects of the case will preclude summary [adjudication]." (*Shively v. Dye Creek Cattle Co.* (1994) 29 Cal.App.4th 1620, 1627; *Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1379.) Notably, even if we assumed that CDCR failed to engage in the interactive process and failed to offer a reasonable accommodation, this would not compel the conclusion that CDCR is liable for disability discrimination. The refusal to participate in the interactive process or refusal to provide a reasonable accommodation "do not constitute 'adverse employment actions' in the context of a claim of discrimination." (*Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1106 (*Brown*).)

Instead, an employer's failure to engage in the interactive process and failure to provide a reasonable accommodation represent independent causes of action subject to different elements of proof. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 255-256 (*Jensen*) [a claim for discrimination and a claim for failure to accommodate have different elements of proof, although there is some overlap]; *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 360-361 [Section 12940, subd. (m) "defines a separate and distinct unfair employment practice independent of [section 12940, subd.

(a)]"]; *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54 (*Gelfo*) [the employer's failure to reasonably accommodate a disabled individual and failure to engage in a good faith interactive process represent independent violations of the FEHA].) And an employer may be liable for the failure to engage in the interactive process or failure to provide a reasonable accommodation, without being liable for discrimination. (See *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 419, 424-425 [jury verdict in favor of employer on discrimination and failure to accommodate claim is not inconsistent with verdict in favor of employee on interactive process claim]; *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 442 ["An employer's failure to provide reasonable accommodation is a violation of the statute even in the absence of an adverse employment action"].)

Thus, plaintiff does not show a material dispute of fact with respect to her claim for disability discrimination under section 12940, subdivision (a), by pointing to evidence that might suggest CDCR is liable under different provisions of the FEHA. Absent evidence regarding plaintiff's ability to perform the essential duties of her job with or without an accommodation, plaintiff did not meet her burden of showing a material dispute of fact in opposition and the trial court did not err in granting summary adjudication in favor of CDCR on this cause of action.

*C. Failure to Provide Reasonable Accommodation*

1. Issues Framed by the Pleading

Plaintiff's second cause of action alleged that CDCR failed to offer her a reasonable accommodation with respect to her disability-related work restrictions in

violation of section 12940, subdivision (m)(1).  The "FEHA requires employers to make reasonable accommodation for the known disability of an employee unless doing so would produce undue hardship to the employer's operation."  (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 373; *Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 345 (*Kaur*); § 12940, subd. (m)(1).)  "Reasonable accommodations include '[j]ob restructuring, part-time or modified work schedules, *reassignment to a vacant position*, . . . and other similar accommodations for individuals with disabilities.' "  (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 969.)

To obtain summary adjudication of this cause of action, CDCR was required to produce evidence to show that "(1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith."  (*Jensen*, *supra*, 85 Cal.App.4th at 263; *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 243 [same]; *Kaur*, *supra*, 83 Cal.App.5th at p. 347 [same].)

2. CDCR Met Its Initial Burden on Summary Adjudication

In support of its motion, CDCR presented evidence to show that the course of plaintiff's disability evolved over three distinct periods:  (1) a period from June 2016 to August 2018 in which plaintiff was subject only to temporary work restrictions for her physical injury; (2) the period from August 2018 through January 2019 during which

18

plaintiff's work restrictions for her physical injury were considered permanent; and (3) the period from January 2019 onward in which plaintiff informed CDCR of a new, previously undisclosed mental health injury. Because "[s]ection 12940, subdivision (m) requires an employer to accommodate only a '*known* disability' " based upon its knowledge of the extent of plaintiff's limitations (*Doe v. Department of Corrections & Rehabilitation*, *supra*, 43 Cal.App.5th at pp. 738-739; *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1252), it is helpful to analyze CDCR's evidence in light of each period of time in which plaintiff's disabilities gave rise to different limitations.

First, it was undisputed that plaintiff was not required to work, but was placed on disability leave with wage replacement benefits up until the month before her work restrictions became permanent. This was evidence that a reasonable accommodation was actually offered and accepted during the period in which plaintiff was subject only to temporary work restrictions for her physical injury. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226 (*Hanson*) [evidence that the employer provided accrued paid leave for treatment constitutes evidence that the employer has provided a reasonable accommodation].) Once a reasonable accommodation was offered and accepted with respect to known limitations, CDCR had no obligation to offer alternative accommodations unless plaintiff made a request or notified CDCR that its initial accommodation was failing. (*Brown*, *supra*, 60 Cal.App.5th at 1108 ["if employer did not know a reasonable accommodation was not working, a duty to provide further accommodation never arose"]; *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013 (*Scotch*) [employer's duty to engage in the interactive process

"continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed"].)

Second, CDCR offered evidence to show that (1) from May 2018 through November 2018 it communicated with plaintiff on multiple occasions regarding potential options to pursue; (2) it identified medical demotion to an alternative position as a potential option for plaintiff's consideration during this exchange of communication; (3) once plaintiff consented to a medical demotion, CDCR proceeded to identify and offer her an alternate position; and (4) plaintiff declined to accept the alternate position. This was evidence that a reasonable accommodation was offered and refused with respect to plaintiff's permanent restrictions. (*Jensen*, *supra*, 85 Cal.App.4th at 263 [an employer may prevail on summary judgment by showing evidence that a reasonable accommodation was "offered and refused"]; *Claudio*, *supra*, 134 Cal.App.4th at 243 [same]; *Kaur*, *supra*, 83 Cal.App.5th at p. 347 [same].)

Finally, with respect to plaintiff's mental disability, CDCR presented evidence that plaintiff's psychologist represented plaintiff was "unable to work . . . due to her illness" beginning in January 2019; that this mental disability and resulting limitation was not disclosed to CDCR until February 2019, and plaintiff's admission that she represented her mental disability rendered her "mentally incapable of returning to work" because her psychologist instructed she "was not supposed to be anywhere near CDCR." This was evidence that as of January 2019, there was no accommodation available that would have permitted plaintiff to return to work in any position with CDCR. (*Jensen*, *supra*,

20

85 Cal.App.4th at p. 263 [an employer may prevail on summary judgment by showing "there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation"]; *Claudio*, *supra*, 134 Cal.App.4th at 243; *Kaur*, *supra*, 83 Cal.App.5th at p. 347.)

When taken together, CDCR's evidence showed it was entitled to judgment in its favor on plaintiff's cause of action for failure to provide a reasonable accommodation with respect to each disability of which it had knowledge. Thus, CDCR met its initial burden on summary adjudication of this cause of action and the burden shifted to plaintiff to produce evidence to show a material dispute of fact.

3. Plaintiff Failed to Meet Her Corresponding Burden in Opposition

In opposition, plaintiff did not dispute any of the facts that entitled CDCR to judgment in its favor on the cause of action for failure to reasonably accommodate her disability. Instead, she argued, as she does on appeal, that CDCR could have, but refused to provide her with an alternative accommodation in the form of disability retirement.[7]

---

[7] In her opposition filed in the trial court, plaintiff also suggested that assignment to "light duty" would have been a reasonable accommodation. However, it was undisputed that as of August 2018 plaintiff's work restrictions were considered permanent, and "an employer is not required to create light-duty positions for purposes of accommodating a disabled employee unable to perform the essential functions of the position for which he or she was hired." (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1224; *Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 982-983 [employers are not "required to create permanent light-duty assignments to accommodate disabled employees"].) Ultimately, we need not consider this argument in depth because plaintiff did not renew it in her opening brief on appeal and therefore, it is deemed abandoned. (*Bitner v. Department of Corrections and*

[footnote continued on next page]

We disagree with the underlying premise of this argument. As we explain, in our view, a disability retirement in the PERS system is not a reasonable accommodation within the meaning of section 12940, subdivision (m)(1).

"Under FEHA, 'reasonable accommodation' means 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.' " (*Atkins v. City of Los Angeles*, *supra*, 8 Cal.App.5th at 719-720; 2 Cal.Code Regs., § 11065, subd. (p).) The term "is defined in the FEHA and its implementing regulations only by way of example." (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 971-973; § 12926, subd. (p); 2 Cal.Code Regs., § 11065, subd. (p).) However, it is evident that all of the statutory and regulatory examples of reasonable accommodations constitute efforts intended to facilitate the disabled employee's eventual return to work in some capacity. (§ 12926, subd. (p); 2 Cal. Code Regs., § 11065, subd. (p).) Indeed, it is widely accepted that the very purpose of the interactive process is to ascertain a reasonable accommodation in order to "avoid the employee's termination." (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 243-244; *Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1195 [purpose of interactive process is to "attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively"]; *Gelfo*, *supra*, 140 Cal.App.4th 34, 62 ["the focus of the interactive process

*Rehabilitation* (2023) 87 Cal.App.5th 1048, 1065 [appellant forfeits claim by failing to raise it in opening brief].)

22

centers on employee-employer relationships so that capable employees can remain employed if their medical problems can be accommodated"].)

In contrast, the purpose of a disability retirement under PERS is not to facilitate a disabled employee's eventual return to work. The express statutory purpose of a disability retirement is to permit the disabled employee to be "replaced by more capable employees" (§ 20001) while alleviating "the harshness that would accompany the termination of an employee who has become medically unable to perform his duties." (*Haywood v. American River Fire Protection Dist.* (1998) 67 Cal.App.4th 1292, 1304.) As this court has repeatedly recognized, disability retirement is a form of separation from employment. (*Riverside Sheriffs' Assn. v. County of Riverside* (2009) 173 Cal.App.4th 1410, 1419 ["disability retirement" is a "means of removing an employee from a job" that serves as an alternative to termination as the result of a disability]; § 21153 [requiring employers to apply for disability retirement in PERS prior to separation due to disability]; *Gonzalez v. Department of Corrections & Rehabilitation* (2011) 195 Cal.App.4th 89, 95-96 [§ 21153 requires an employer to apply for involuntary disability retirement "[i]n order to separate such employees"].)[8] And from an employee's perspective, such a separation is indistinguishable from a dismissal. (*Mooney v. County of Orange* (2013) 212 Cal.App.4th 865, 879-880 [observing in the context of a parallel statutory scheme that "the employer's act of separating the employee from employment

---

[8] While an employee receiving disability retirement continues to have a relationship with the employer, such relationship is "abated" and limited to the disabled annuitant's ability to petition for reinstatement to active service. (*Smith v. City of Napa* (2004) 120 Cal.App.4th 194, 203-204.)

23

. . . from the employee's perspective, is indistinguishable from a dismissal from employment"].)

Given this understanding, construing a disability retirement in the PERS system as a potential reasonable accommodation within the meaning of section 12940, subdivision (m)(1), would produce an anomalous result. The "FEHA does not obligate an employer to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks" as long as the accommodation chosen is reasonable. (*Raine v. City of Burbank*, *supra*, 135 Cal.App.4th at 1222; *Hanson*, *supra*, 74 Cal.app.4th at 228.) Thus, adopting the interpretation that a disability retirement constitutes a reasonable accommodation would permit an employer to comply with the mandate of section 12940, subdivision (m)(1), by separating and replacing a disabled employee even if other reasonable accommodations might also be available that would permit the disabled employee to return to work. Such an outcome would be directly contrary to the purpose of section 12940, subdivision (m)(1), which is to encourage employers to pursue all reasonably available means to facilitate a disabled employee's return to work.

Thus, we conclude that a disability retirement in the PERS system does not constitute a reasonable accommodation within the meaning of section 12940, subdivision (m)(1). Given this conclusion, even if CDCR wrongfully refused to apply for disability benefits on plaintiff's behalf,[9] this would not create a material dispute of fact precluding

---

[9] Our conclusion does not render an employee who believes she has been wrongfully denied a disability retirement without remedy. Such an employee may file a writ of administrative mandate to require her employer comply with section 21153 by

*[footnote continued on next page]*

summary adjudication of plaintiff's cause of action for failure to accommodate. Absent evidence to show a material dispute regarding whether a reasonable accommodation could have, but was not, offered, summary adjudication on this cause of action was proper.

*D. Failure to Engage in the Interactive Process*

    1. Issues Framed by the Pleading

The third cause of action in the operative complaint alleges that CDCR failed to engage in the interactive process to identify a reasonable accommodation in violation of section 12940, subdivision (n). The FEHA prohibits an employer from failing "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability." (§ 12940, subd. (n); *Gelfo*, *supra*, 140 Cal.App.4th at p. 61.)

"The purpose of the interactive process is to determine what accommodation[] is required." (*Brown, supra*, 60 Cal.App.5th at 1109.) Thus, an "employer cannot be held liable for failing to engage in [the] interactive process when the employee was in fact offered a reasonable accommodation." (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1195; *Hanson*, *supra*, 74 Cal.App.4th at 229 [there is "no reason why [an] employer should be subjected to liability for failing to engage in the interactive

---

filing an application for disability retirement on her behalf. (See *Lazan v. County of Riverside* (2006) 140 Cal.App.4th 453, 456.) We do not and need not consider whether CDCR had such a duty in this case, as plaintiff voluntarily dismissed her cause of action under section 21153.

process where the employee was reasonably accommodated"]; *Brown*, *supra*, 60 Cal.App.5th at pp. 1109-1110 [allegation that employer agreed to a reasonable accommodation was inconsistent with a claim that employer failed to engage in the interactive process].)

Likewise, an employer cannot be held liable for failure to engage in the interactive process where the employee is unable to identify a reasonable accommodation that would have been available had the parties engaged in the interactive process. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, *supra*, 166 Cal.App.4th at 981 [section 12940, subd. (n) "imposes liability only if a reasonable accommodation was possible"]; *Shirvanyan v. Los Angeles Community College District* (2020) 59 Cal.App.5th 82, 96 ["in order to succeed on a cause of action for failure to engage in an interactive process, 'an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred' "]; *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 379-380 [employer entitled to summary judgment on interactive process claim where employee is unable to identify an available reasonable accommodation].)

Thus, as framed by the pleading, CDCR could obtain summary judgment by showing either (1) that a reasonable accommodation was, in fact, offered in response to a known disability or (2) that no reasonable accommodation was available even if the parties had engaged in the interactive process with respect to a known disability.

## 2. CDCR Met Its Initial Burden on Summary Adjudication

As we have already detailed in our discussion of plaintiff's claim for failure to provide a reasonable accommodation, CDCR produced evidence (1) that a reasonable accommodation was offered and accepted in the form of temporary disability leave during the period of time plaintiff's disability subject her to temporary work restrictions; (2) that CDCR re-engaged in the interactive process prior to the exhaustion of plaintiff's temporary disability leave wage replacement benefits; (3) that this continued interactive process eventually resulted in an offer of reasonable accommodation in the form of a medical demotion to an alternative position; and (4) plaintiff and her treating psychologist represented to CDCR that plaintiff could not return to work while receiving treatment for her mental disability. This was sufficient evidence to show that reasonable accommodations were actually offered in response to plaintiff's physical disability and to show that no reasonable accommodation was available with respect to plaintiff's mental disability. Thus, CDCR met its initial burden on summary adjudication of this cause of action and the burden shifted to plaintiff to produce evidence to show a material dispute of fact.

## 3. Plaintiff Failed to Meet Her Corresponding Burden in Opposition

In her opposition to summary adjudication of this issue, plaintiff did not produce any evidence to show that the accommodations offered in response to her physical

27

disability were unreasonable.[10] Nor did plaintiff produce evidence of an available reasonable accommodation that could have been offered in response to her January 2019 notification that she was disabled as the result of a previously undisclosed mental health condition. Thus, plaintiff failed to meet her burden in opposition to produce evidence to show a material dispute of fact precluding summary adjudication of this cause of action.

On appeal, plaintiff argues that the evidence shows CDCR's actions during the interactive process were conducted in bad faith, criticizing CDCR for ineffective communication, failing to affirmatively assist plaintiff in identifying more potential accommodations, placing plaintiff in an informational and negotiating disadvantage, and failing to seriously consider the extent of available accommodations. However, regardless of how deficient an employer's participation in the interactive process may be "[u]nless, after litigation with full discovery, [an employee] identifies a reasonable accommodation that was objectively available during the interactive process, he has suffered no remedial injury from any violation of section 12940, subdivision (n)." (*Scotch*, *supra*, 173 Cal.App.4th at 1019.)

Thus, even accepting plaintiff's characterization of the evidence as showing that CDCR somehow acted in bad faith, such evidence does not show the existence of a

---

**10** In the trial court and on appeal, plaintiff suggests that the offer of an alternative position may not have been reasonable because she did not qualify for the alternative positions suggested by CDCR given her physical restrictions against squatting, kneeling, and bending. However, we find no evidence in the record to support this assertion. With respect to the personnel specialist position that was actually offered to plaintiff, the duty statement produced by plaintiff in opposition states only that the employee "may choose" to stoop, bend or kneel to accomplish specific tasks.

triable dispute of fact precluding summary adjudication where there is no evidence that a reasonable accommodation was available to offer had CDCR engaged in the interactive process to plaintiff's satisfaction.  Because CDCR met its initial burden on summary adjudication and plaintiff failed to meet her corresponding burden in opposition, the trial court did not err in granting summary adjudication of the cause of action.

*E. Failure to Prevent Discrimination*

Plaintiff's fourth cause of action alleged that CDCR failed to prevent discrimination in violation of section 12940, subdivision (k). Generally, this provision requires employers "to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  (§ 12940, subd. (k).)  However, "[a]n actionable claim under section 12940, subdivision (k) is dependent on a claim of actual discrimination: 'Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented.' " (*Scotch*, *supra*, 173 Cal.App.4th at 1021; *Wilkin v. Community Hospital of the Monterey Peninsula* (2021) 71 Cal.App.5th 806, 830 ["An employer cannot be liable for failure to prevent discrimination . . . if there is no actionable discrimination in the first place"].) Thus, "where . . . a plaintiff cannot establish a claim for discrimination, the employer as a matter of law cannot be held responsible for failing to prevent same:  '[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen . . . .' " (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1166.)

29

Here, we have already determined that the trial court properly granted summary adjudication on plaintiff's first cause of action for disability discrimination. CDCR cannot be held liable for the failure to prevent discrimination where plaintiff does not have a viable underlying claim for discrimination in the first instance. Accordingly, the trial court did not err in granting summary adjudication on this cause of action.

*F. Retaliation*

The fifth cause of action in the complaint alleged that CDCR engaged in impermissible retaliation in violation of the FEHA because plaintiff was subject to "adverse actions . . . beginning with being placed unilaterally on an unpaid leave of absence" as the result of her "involuntary act of becoming disabled." "The elements of a claim for retaliation in violation of [the FEHA], are: '(1) the employee's engagement in a protected activity . . .; (2) retaliatory animus on the part of the employer; (3) an adverse action by the employer; (4) a causal link between the retaliatory animus and the adverse action; (5) damages; and (6) causation." (*Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 243.) Protected activity subject to protection from retaliation is now defined in two, separate provisions of the FEHA. Under section 12940, subdivision (h), "protected activity takes the form of opposing any practices forbidden by FEHA or participating in any proceeding conducted by the DFEH or the Fair Employment and Housing Council (FEHAC)." (*Nealy*, *supra*, 234 Cal.App.4th at p. 380; § 12940, subd. (h).) Additionally, requesting reasonable accommodation for a disability is also activity protected from retaliation. (§ 12940, subd. (m)(2).)

However, it is clear that "the involuntary act of becoming disabled" does not constitute protected activity under either of the retaliation provisions in the FEHA. Under the plain meaning of section 12490, subdivision (m)(2), the protected activity is the act of making a request for accommodation (*Zamora*, *supra*, 71 Cal.App.5th at p. 65 [the Legislature intended section 12490, subd. (m)(2) "to provide protection against retaliation when an individual makes a request for reasonable accommodation"]), and the fact an employee is disabled does not mean the employee has made such a request (*King v. United Parcel Service, Inc.*, *supra*, 152 Cal.App.4th at pp. 442-444 [even assuming employee was disabled, employee did not "communicate[] his distress to his supervisors or [make] the kind of specific request for a modified work schedule required to trigger an employer's duty to provide accommodation"]).

Likewise, "[n]otifying one's employer of one's medical status, even if such medical status constitutes a 'disability' under FEHA, does not fall within the protected activity identified in subdivision (h) of section 12940—i.e., it does not constitute engaging in opposition to any practices forbidden under FEHA or the filing of a complaint, testifying, or assisting in any proceeding under FEHA." (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 247-248.) Thus, because the complaint alleges that the protected activity subject of this claim was "the involuntary act

31

of becoming disabled," we conclude that the issues, as framed by the pleading, entitled CDCR to summary adjudication on this cause of action.[11]

On appeal, plaintiff argues that a material dispute of fact remains because CDCR's actions during the interactive process can also be construed as retaliation in response to plaintiff's protected act of making a request for accommodation. However, "The pleadings delimit the issues to be considered on a motion for summary judgment. . . . Thus, a 'defendant moving for summary judgment need address only the issues raised by the complaint [and] the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' . . . If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.)

Because the complaint alleged only plaintiff's "involuntary act of becoming disabled" as the protected activity upon which her retaliation cause of action was premised, this was the only theory of liability CDCR was required to address in moving for summary adjudication and the only theory the trial court was required to consider in ruling on the motion. Plaintiff cannot overcome summary adjudication by raising a new,

---

[11] At least one ground asserted in CDCR's motion for summary adjudication of this cause of action was that plaintiff could not establish that any alleged adverse action was causally related to plaintiff's involvement in protected activity.

unpleaded theory in opposition without amending the operative pleading prior to the hearing on the motion.[12]

Because we conclude that the trial court properly granted summary adjudication on each cause of action alleged in the operative complaint, we necessarily also conclude that the trial court did not err in granting summary judgment on the entire complaint.

## IV. DISPOSITION

The judgment is affirmed.  Respondent to recover its costs on appeal.

FIELDS
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

---

[12]  We recognize that in opposition to summary adjudication, plaintiff included a general, non-specific request for leave to amend her complaint "if the court grants summary adjudication as to any of the disputed claims."  While the trial court's ruling on a request for leave to amend made at the time of summary judgment is reviewed for abuse of discretion (*Alameda Health System v. Alameda County Employee's Retirement Association* (2024) 100 Cal.App.5th 1159, 1188-1189), plaintiff has not challenged this aspect of the trial court's ruling on appeal and, as a result, any claim that the trial court abused its discretion in declining to rule on plaintiff's request has been forfeited.  (*Bitner v. Department of Corrections and Rehabilitation*, *supra*, 87 Cal.App.5th at p. 1065.)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

**<u>ORDER</u>**

| | |
|---|---|
| MARIA MILLER, | |
| Plaintiff and Appellant, | E081230 |
| v. | (Super.Ct.No. CVRI2000221) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT

The request for publication of the nonpublished opinion filed in the above matter September 20, 2024 is GRANTED. The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(4).

1

IT IS SO ORDERED that said opinion filed September 6, 2024, be certified for publication pursuant to California Rules of Court, rule 8.1105(b).


FIELDS
           J.

We concur:

RAMIREZ
                    P. J.

MILLER
                   J.